WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Jeanne M. Christensen**
jchristensen@wigdorlaw.com

May 16, 2023

**VIA EMAIL**

The Honorable M. Page Kelley
United States District Court
District of Massachusetts
1 Courthouse Way, Suite 2300, Courtroom 24
Worcester, Massachusetts 02210

Re: Doe 1 v. McAdam Financial Group LLC, et al.;
Case No. 1:22-cv-11361-PBS

On behalf of Plaintiff, we write pursuant to the Court's Order dated May 9, 2023 ("Order") to provide a brief status of remaining discovery that Plaintiff seeks from Defendant Charles Norfleet ("Norfleet"). Counsel for Norfleet has represented that he is not in possession of any documents or emails from McAdam Financial, thereby preventing him from producing anything in response to certain demands. However, the document demands refer to all communications, which are defined in the discovery requests as any communications, including text messages, or messages on social networking platforms. As part of Plaintiff's complaint, she included allegations that Norfleet participated in group texts with specific individuals, and that such group texts involved comments of a sexualized nature and included comments about physical appearances of female employees. See Complaint ¶¶ 48-50.[1] No representations have been made that Norfleet's text

[1] These allegations read as follows: "48. One reason nothing was done about it was because other male managers also engaged in unlawful conduct, including with Norfleet. Specifically, female employees talked about the regular group chats between Norfleet, [redacted] and [redacted] that were held as part of the ordinary course of business at McAdam Financial. 49. The reason female employees talked about it, including with Ms. Doe 1, was that it was well known at the Company, that these four men, all in supervisory positions, often discussed and exchanged banter about the appearances of their female coworkers. 50. these verbal exchanges were of a sexualized nature. There is simply no business-related reason for a group of men, who worked at a finance company, to engage in regular group chats about the physical looks of female employees." Complaint ¶¶ 48-50.

WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW



messages have been searched by an outside vendor or even by his counsel, to see if responsive texts exist. At a minimum, this needs to be done and all responsive texts must be produced. Below are the relevant demands for which outstanding discovery remains:

**Document Request No. 4**

All text messages between June 2020 and the present about or relating to Plaintiff in any way between Norfleet and any of the following individuals: [redacted]

In response, Norfleet produced a single page with one text between himself and an undisclosed individual regarding Plaintiff, that was heavily redacted. Norfleet was 26 in 2021. It defies common sense that he was not communicating with his friends and coworkers about the events surrounding June 25-26, 2021 and the aftermath. For example, if Norfleet texted with any of these people about his "resignation" in mid-July 2021, and the events leading to the resignation, such texts are responsive to this request and are directly relevant to Plaintiff's claims. To date, no texts have been produced about this event.

Counsel for Norfleet told us this afternoon that "several texts" would be produced today and that would be Norfleet's "full response." Then, at 6:13pm, counsel for Norfleet produced twenty-two (22) pages of text messages – largely consisting of group text messages between McAdam managers. On initial review, Norfleet's most recent production conclusively shows that not only are there text messages evaluating the performance of entry-level financial advisors but, there are text messages among McAdam leadership specifically referencing Plaintiff that have not been produced. This, of course, begs the question – what other relevant text messages have not been produced? Notably, to date, McAdam produced a total of 6 text messages about Plaintiff from [redacted] and a total of 8 texts about Plaintiff from [redacted] – but not a single group text in which [redacted] and [redacted] were clearly participants and Plaintiff was certainly discussed. As we now know from the production 45 minutes ago by Norfleet, such group messages that specifically use Plaintiff's first name, indeed exist. As such, we must follow up with counsel for McAdam about production from these two individuals. Further, Norfleet must allow his counsel or outside vendor review his texts for responsive messages to Plaintiff's outstanding discovery requests.

**Document Request No. 5**

All documents communications, and/or ESI reflecting Norfleet's job duties, responsibilities and functions between January 2020 and July 2021.

**Document Request No. 7**

All documents, communications and ESI, between 2019 and July 2021, showing Norfleet's role or function in helping to train entry-level advisors who worked at the Boston office of McAdam, including documents that identify the names of any such trainees.

Norfleet produced no documents responsive to these two requests. Surely, there are communications regarding the work Norfleet did while employed at McAdam over the course of the years he was there reflecting his functions and responsibilities, including via texts. Again, he worked day in and out with the people listed in Request 4, and in the Complaint at ¶¶ 48-50. In fact, in response to interrogatory no. 5, Norfleet responded that he "would have been in some meeting regarding training and/or sales techniques with **nearly every entry-level financial advisor affiliated with McAdam's Boston office.**" (emphasis added). Yet, until just minutes ago, he has not produced a single communication with any McAdam employee regarding work, meetings or trainings.

Also, it is our understanding that Norfleet lived with one coworker, [redacted], during a period of his employment. Of course, he exchanged text messages with him and other managers, about work. If such work involved training the entry-level advisors such as Plaintiff and the other entry-level advisors she trained with, such information is relevant, and Norfleet is obligated to produce it – especially since he has no email access.

In this regard, Plaintiff conferred with counsel for McAdam and to the extent Norfleet exchanged emails with three specific entry-level advisors, about work he performed involving them, such as leading workshops, McAdam has agreed to produce those emails.[2]

---

[2] Plaintiff narrowly tailored the request to McAdam's searches both in time and scope. Specifically, Plaintiff requested: "For the period of Plaintiff's employment at McAdam Financial produce all emails including any attachments either "To" or "From" Norfleet's McAdam email that concern his involvement and/or his work helping to train the entry-level advisors who were a part of Plaintiff's training group, specifically: [redacted]."

**Document Request No. 10**

All documents showing who Norfleet reported to at McAdam between June 2019 and his exit.

Plaintiff has been seeking such information from Norfleet and from McAdam since discovery began. If Norfleet received texts from his supervisor about what he needed to do and when, for example, the reporting relationship would be obvious. Since Norfleet refuses to produce anything, we are left wondering who Norfleet, the "district manager," reported to at the Boston office. We requested that McAdam search emails that identify whether Norfleet's title/position or his reporting lines changed between 2017 and his departure in July 2021, while at McAdam, and specifically if he received any promotions or changes in his title.

For example, even a change in Norfleet's signature block, listing his position, would provide information about his rank and authority at McAdam. McAdam agreed to produce any responsive information as to this request.

In sum, while receiving some information this evening is helpful and productive, it makes it clear that more likely than not, additional information that is relevant to Plaintiff's claims, such as the group chat of four male managers discussing female employees, remains outstanding. If the only "searches" for such relevant information have been done by Norfleet himself, without a complete download of his texts to his own counsel or to an outside vendor, for example, then this is hardly a complete response to the requests.

Thank you for your time and attention to this matter.

Respectfully submitted,

Jeanne M. Christensen

Cc: All counsel of Record (*via* email)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2023, I served the foregoing Status Report *via* ECF upon all counsel of record.

Jeanne M. Christensen, Esq.