**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---------------------------------------------------------- X
JANE DOE 1, :
: Civil Action No.: 22-cv-11361 (PBS)
Plaintiff, :
:
v. :
:
MCADAM FINANCIAL GROUP LLC, and :
CHARLES NORFLEET, in his individual and :
professional capacity, :
:
Defendants. :
---------------------------------------------------------- X

**PLAINTIFF JANE DOE 1'S DISCOVERY STATUS REPORT**

Plaintiff Jane Doe 1 ("Plaintiff"), by and through the undersigned counsel, writes to update the Court on the status of outstanding discovery issues in this matter.

On behalf of Plaintiff, we write pursuant to the Court's Order dated June 5, 2023 ("Order") to provide a brief status of outstanding discovery disputes between Plaintiff, Defendant McAdam Financial Group LLC ("McAdam") and Defendant Charles Norfleet ("Norfleet"). Defendants filed their own status report.

## I. Defendant McAdam's Request for a Hearing

In that request, McAdam misleadingly represented that Plaintiff was to produce "treatment notes" from "Plaintiff's current therapist, or confirmation in writing that none exist" citing to the Court's Order. Dkt. No. 96. That was not ordered. Rather, the Court said the parties should confer as to the "temporal limits" of Plaintiff's medical records. The dispute involved Plaintiff's pediatrician records because Plaintiff's counsel argued that records going back past five years would mean producing records from when she was a minor. The parties did meet and confer about it and Plaintiff's counsel agreed to produce her pediatrician records going back five years. Plaintiff produced those pediatrician records to Defendants in full, unredacted on June 2, 2023.

In the June 1, 2023 request for a hearing and in the status report filed this afternoon, Dkt. No. 122, McAdam once again provides misleading information about what was ordered by the Court. Specifically, McAdam claims Plaintiff was ordered to produce "medical records, including treatment notes, treatment records, and billing records from Plaintiff's current therapist." That issue was not part of the Order and regardless, on April 24, 2023, Plaintiff sent counsel for McAdam a HIPAA compliant consent for the release of medical records from Plaintiff's current therapist, **which requested a complete file, including any notes.**

McAdam is upset that it received a report from this treating therapist in the form of a letter report. This is exactly the record that counsel for Plaintiff received. Rather than trying to determine what other information this therapist has on its own, McAdam unreasonably insists that it is Plaintiff's counsel's responsibility to force the production of more documents from the HIPAA forms. Such a request is unreasonable and unfounded. Worse, McAdam has represented to the Court that the Order on March 22, 2023 says Plaintiff's counsel must engage in this conduct, which it does not. Dkt. No. 96. Further, it was represented that Plaintiff was not seeking reimbursement for the costs of her therapy in this litigation and therefore billing records were unnecessary – even though the prior therapists produced same to McAdam.

As set forth below, other than the above issue, for every single discovery request McAdam placed on Plaintiff that was part of McAdam's motion to compel, and that the Court ordered Plaintiff to do, she has complied fully. Seeking to create a dispute sufficient to warrant this Court's intervention, McAdam now claims that Plaintiff's counsel must also provide the home address of Plaintiff's current boyfriend in New York City ("NYC") presumably so that McAdam can serve him with a subpoena even though it has attempted service at his place of employment in NYC already. Such a request is incredible, given that Plaintiff was forced to spend significant funds on

process servers and time chasing the "non-employees" it had to subpoena as third parties because McAdam repeatedly refused to acknowledge that these persons had anything to do with being employees at McAdam and it said it had no discovery obligations to help facilitate such service of subpoenas. For more than four months, McAdam has refused to provide any information, leading Plaintiff to chase several of these persons, including Ian Helmus who has evaded service even though Plaintiff's counsel wishes to depose him and obtain relevant documents.

Now suddenly, when McAdam realized that it requested judicial intervention in the form of a hearing over therapy notes that we do not even know exist and the address of Plaintiff's current boyfriend, it represented to this Court that it has been asking for some sort of quid pro quo regarding non-party subpoenas and depositions – <u>after Plaintiff has spent months chasing ten people</u>. This is disingenuous and Defendants should not be rewarded for their own dilatory conduct simply because they want to depose Plaintiff's boyfriend and mother, who reside more than 100 miles from Boston (the district court which Defendants filed motions to transfer this case to after Plaintiff initiated this action in the Southern District of New York). Now that Defendants were granted that motion and the action is in Boston before this Court, they believe that Plaintiff should facilitate their service of process on non-parties residing in New York and other states.

## II. <u>Plaintiff Provided the Discovery Listed in McAdam's June 1, 2023 Report</u>

Defendants cannot dispute that Plaintiff has provided the following:

- Unredacted medical records from Plaintiff's pediatrician going back 5 years;
- Unredacted and complete medical records from Plaintiff's primary care physician who prescribes Plaintiff's medication;

- All of Plaintiff's text messages in her possession sent or received on June 25 and 26, 2021 to numerous individuals;
- Plaintiff's credit card statement with unredacted dates of all transactions for the month of June/July 2021 in which the purchases made on June 25 or June 26, 2021 are unredacted;
- Plaintiff confirmed that no debit purchases or Venmo transactions were made on June 25 or 26, 2021; and
- Plaintiff provided contact information for Plaintiff's two roommates with whom she lived with as of June 25 and June 26, 2021, who are in NYC.

As such, contrary to Defendants' representations about numerous "disputes" for Plaintiff's alleged deficiencies, Plaintiff has produced her relevant information.

Defendants' representations to the Court about alleged outstanding discovery disputes as per the report filed this afternoon, Dkt. No. 122, contains misleading representations about what was discussed by the parties.

## III. <u>Discovery Owed by Defendant McAdam</u>

Presently, McAdam refuses to respond to discovery by Plaintiff because it argues that Plaintiff must file a motion pursuant to Rule 26.1(c) of the Local Rules for the U.S. District Court for the District of Massachusetts (the "Local Rules"). Arguing form over substance, McAdam conveniently refuses to acknowledge that Plaintiff's first Requests for the Production of Documents ("Requests") on December 5, 2022, contained a total of twenty-one (21) Requests, and thereafter, on January 25, 2023, Plaintiff sent McAdam three (3) additional Requests. The Requests totaled 24. On February 2, 2023, Plaintiff propounded six (6) additional document Requests for a total of 30.

McAdam's defense in this action is that it is not responsible for anything that happened to Plaintiff because it is not an employer. McAdam's position is that because it purports to not be an

employer, it does not have to produce relevant information about the workplace. As such, Plaintiff was left no choice but to draft further supplemental Requests seeking any information possible to show that McAdam is in fact an employer. Plaintiff used McAdam's own public postings and representations about, *inter alia*, the firm, the workplace culture specifically, and what it is like to work at McAdam, made on YouTube, as one way to seek this information, as well as publicly available job postings on internet sites. Therefore, on April 4, 2023 ("April 4 Requests"), Plaintiff propounded five (5) supplemental document Requests seeking relevant documents regarding, *inter alia*, various jobs and positions listed on McAdam's website, McAdam's YouTube Channel, and the job descriptions for those who evaluate and hire the "talent" at McAdam, as described in numerous job postings and on McAdam's YouTube page. *See* Ex. 1. Specifically, McAdam's Youtube page included videos regarding the "culture" at McAdam, as well as the functions and work performed in the various roles at McAdam. The April 4 Requests are relevant to Plaintiff's allegations that she was a McAdam employee subject to the supervisory authority of McAdam managers.

Then, on April 6, 2023, Plaintiff served fifteen (15) document Requests seeking information regarding McAdam's financial records. *See CEH, Inc. v. F/V Seafarer*, 70 F.3d 694 (1st Cir. 1995) (noting that consideration of a defendant's net worth in determining the amount of punitive damages is integral to objectives of punitive damages); Ex. 1.

McAdam refuses to respond to any of the Requests under Rule 26.1(c) because the April 4 and 6, 2023 letters were sent subsequent to the 30 document Requests previously made. In May 4, 2023, correspondence, McAdam asserted that it will not respond to Plaintiff's April 4 or 6, 2023 Requests, nor any further document requests from Plaintiff, "unless and until required to do so under the Local Rules." Meaning, McAdam will not produce relevant documents requested by

Plaintiff without necessitating further motion practice and court intervention. Plaintiff has requested that McAdam meet and confer next week in an effort to narrow the disputes about what will be produced and potentially avoid using the Court's resources to resolve. Notably, including the April 4 and 6, 2023 supplemental document requests, Plaintiff has propounded **a total of 50 document requests** – many of which McAdam did not produce any responsive documents for. This number is reasonable and relevant to the causes of action and legal defenses raised by McAdam in this action.

In McAdam's status report filed this afternoon, Dkt. No. 122, it argues that "McAdam asked if its [16,867 pages of documents] had been reviewed in light of these requests and was advised that no such review had been conducted." Plaintiff received the 16,867 pages on the afternoon of May 23, 2023, 15 days ago. Contrary to McAdam's defense counsel's firm with over 650 lawyers, it is accurate that our law firm with 14 lawyers has not reviewed all 16,867 pages in the last 15 days, including weekends and holidays.

## IV. McAdam's Suspicious Conduct Regarding the April 4 Requests

Following yesterday's meet-and-confer, counsel for Plaintiff was shocked to discover that the YouTube videos requested in the April 4, 2023 Requests had been deleted and removed from the internet. Specifically, the previous YouTube videos that were identified in the April 4 Requests and viewed by counsel for Plaintiff were gone, with the message reading: "This channel doesn't have any content."

As of the date we sent our demands, the McAdam videos were publicly available, including the ones referenced specifically, but a number of other videos as well. Given that the content was posted and available as of April 4, 2023, and now suddenly, all content has been eliminated following our discovery demands, it is suggestive of spoliation of evidence. *See Gordon v.*

*DreamWorks Animation SKG, Inc.*, 935 F. Supp. 2d 306, 313 (D. Mass. 2013) "[S]poliation is the 'intentional, negligent, or malicious destruction of relevant evidence.'" Last night we communicated with counsel for McAdam about this mysterious deletion. Today we were informed simply that "these are old videos made and posted in 2016 that have no relevance in this matter and are thus not evidence." Further, as to spoliation, counsel for McAdam wrote:

> Indeed Plaintiff already has in her possession each and every communication and document sent or received during the entirety of her retention by McAdam amounting to thousands of pages, and thus has the relevant documents relating to her working relationship with McAdam. Finally, and importantly, we have confirmed these videos remain in the possession, custody and control of McAdam and as such there has been no spoliation.

This does not change the fact that Requests were made for these documents, and McAdam first refused to produce based on Rule 26.1(c). We never suspected that the video content would be removed before the issue was raised before this Court. The content is now missing and inaccessible to anyone, including counsel for Plaintiff, eliminating our ability to meaningfully argue about relevancy to the Court or to use the videos in connection with anticipated depositions of defendants and nonparties. While we expect to have a further meet and confer next week about this issue, absent restoration of the videos to YouTube where some have been posted since 2016 but now suddenly "deleted," Plaintiff will be forced to bring this specific issue before the Court.

## V. <u>Discovery Owed by Defendant Norfleet</u>

Counsel for Norfleet has represented that he is not in possession of any text messages, or messages on social networking platforms, other than those already produced, responsive to Plaintiff's document requests. On May 16, 2023, Norfleet produced twenty-one (21) pages of text messages – largely consisting of group text messages between McAdam managers. In total, Norfleet merely produced twenty-six (26) pages of text messages. Norfleet's production to date

is incredulous considering that his own production demonstrates that McAdam employees routinely communicated *via* group texts. Notably, Plaintiff has alleged that Norfleet participated in group texts with specific individuals, and that such group texts involved comments of a sexualized nature and included comments about physical appearances of female employees. Unfortunately, Plaintiff cannot rely on Norfleet to produce relevant text messages, especially those in which he engages in inappropriate behavior regarding female subordinates. As outlined in Plaintiff's May 16, 2023 Status Report, no representations have been made that Norfleet's text messages have been searched by an outside vendor or even by his counsel, to see if further responsive texts exist. In fact, counsel for Norfleet has conceded that Norfleet's texts have not been searched by his counsel nor an outside vendor. At a minimum, this needs to be done and all responsive texts must be produced.

Counsel for Norfleet confirmed Plaintiff's suspicion that an adequate search of Norfleet's text messages has not been done. Specifically, counsel for Norfleet wrote,

> two programs were used to search Mr. Norfleet's text messages on his phone and in his iCloud backup. The programs were iMazing an[d] Ultafone. He searched a variety of terms designed to elicit texts that mentioned your client, including searches of her first and last names. There was only one Avery and Mr. Norfleet's recollection is that she was referred to as Avery.

He has also gone back to review, again, the text threads themselves with the relevant individuals.

Of course, text messages that relate to Plaintiff are beyond text messages that merely reference her by first and/or last name. Relevant text messages would necessarily include those messages that reference this action and/or the sexual assault. To date, Norfleet has not produced a single text message between himself and any McAdam employee that even so much as references this lawsuit or Plaintiff's sexual assault. It is incredulous for Norfleet to assert that he did not

correspond with any McAdam employees - who regularly engage in group text messages - about this action or the allegations levied against him.

Accordingly, Plaintiff requests that Norfleet must exercise due diligence and search his text messages pursuant to certain search terms and provide text messages with specific persons within a date range of June 21, 2021 through his resignation from McAdam on July 12, 2021. As above, Plaintiff has requested that counsel for Norfleet meet and confer next week in an effort to narrow the disputes about what will be produced and potentially avoid using the Court's resources to resolve.

Dated: June 7, 2023
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: ______________________________
Jeanne M. Christensen, *pro hac vice*
Kassandra Vazquez, *pro hac vice*

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
kvazquez@wigdorlaw.com

**LICHTEN & LISS-RIORDAN, P.C.**

Adelaide H. Pagano

729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
apagano@llrlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, I caused the foregoing document to be served on all counsel of record via ECF.

Jeanne M. Christensen